IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ASHLEY SHROCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:18CV962 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Ashley Shrock brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying her claims for period of disability, disability insurance benefits, and supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.

### I. PROCEDURAL HISTORY

In March 2014, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits, alleging a disability onset date of April 1, 2011, later amended to September 1, 2016.[2] (Tr. 305-14, 349.) The applications were denied initially and upon reconsideration. (*Id.* at 196-205, 211-30.) Plaintiff requested a hearing before an

---

[1] Andrew Saul was confirmed as the Commissioner of Social Security on June 4, 2019, and was sworn in on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] At the hearing on May 31, 2017, Plaintiff, in consultation with counsel, amended her alleged onset date of disability from April 1, 2011 to September 1, 2016. (Tr. 77, 349.)

1

Administrative Law Judge ("ALJ"). (Tr. 231-32.) After hearings on January 3, 2017[3] and May 31, 2017, the ALJ determined on September 15, 2017 that Plaintiff was not disabled under the Social Security Act. (Tr. 8-20.) The Appeals Council denied a request for review on September 14, 2018, making the ALJ's decision final for purposes of judicial review. (Tr. 1-7.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of September 1, 2016. (Tr. 14.) At the second step, the ALJ found the

---

[3] The initial hearing was postponed in order that Plaintiff could engage an attorney to represent her. (Tr. 269.)

2

following severe impairments: Crohn's disease with intestinal stricture and related joint pain, treated with ileocecal resection; asthma; anxiety; and specific learning disability. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal in severity to one listed in, Appendix 1. (*Id.*) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined:

> [Plaintiff] has the residual functional capacity to perform sedentary work . . . except she can lift up to 10 pounds occasionally, stand and walk for about 2 hours, and sit for up to 6 hours in an 8 hour work day, with normal breaks; she must avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, and gases, as well a[s] poorly ventilated areas and chemicals; and she is limited to performing simple, routine, and repetitive tasks.

(*Id.* at 16.) At the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 18.) Last, at step five, the ALJ concluded that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 19.) Consequently, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 20.)

### IV. ISSUES AND ANALYSIS

Plaintiff raises three issues on appeal. First, Plaintiff contends that the ALJ's decision failed to make a function-by-function assessment of Plaintiff's mental functions before making an RFC determination. (Docket Entry 13 at 6-11.) Second, Plaintiff contends that, in finding that Plaintiff was moderately impaired in maintaining concentration, persistence, or pace ("CPP"), the ALJ failed to incorporate non-exertional limitations on the ability to stay on task. (*Id.* at 11-18.) Finally, Plaintiff contends that the ALJ failed to follow the treating source rule for evaluating medical opinions and failed to properly weigh the medical opinion of Dr. Jonathan Hansen. (*Id.* at 18-23.) As set forth below, none of these contentions has merit.

3

### 1. Function-by-Function Analysis

Plaintiff first contends that the ALJ's "decision fails to make a function-by-function assessment of [her] functioning before finding residual functional capacity (RFC) . . . [and] [t]he decision's RFC finding also fails . . . to include the required 'function-by-function' assessment" for Plaintiff's mental functioning.[4] (Docket Entry 13 at 7.) As discussed below, this argument is unpersuasive.

RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).") (internal citation omitted); *Hines v. Barnhart,* 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

Additionally, "Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations

---

[4] Since Plaintiff only contends that the ALJ failed to perform a function-by-function analysis for Plaintiff's mental functioning, the Court does not find it necessary to address whether the ALJ failed to perform a function-by-function analysis for Plaintiff's physical functioning.

omitted).  An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).  However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).  As to the role of the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

In *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit clarified that there is no *per se* rule requiring remand if a function-by-function analysis is not performed. However, the Court held that "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review," remand may be appropriate.  *Id.* (internal quotation and citations omitted).  The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling[,]" which "should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."  *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations omitted).

Here, the ALJ adequately considered the entire record and determined that Plaintiff possessed the RFC to perform a reduced range of sedentary work.  (Tr. 16.)  The Court concludes that the RFC is supported by substantial evidence and that the ALJ's narrative

5

discussion of all the evidence in support of his findings in determining Plaintiff's RFC is sufficient to comply with the function-by-function analysis under SSR 96-8p.[5]

More specifically, with respect to Plaintiff's mental impairments, the ALJ discussed the medical evidence with attention to Plaintiff's functional abilities in terms of work-related mental functioning before he determined Plaintiff's RFC, which limits her "to performing simple, routine, and repetitive tasks." (Tr. 16.) *See* 20 C.F.R. §§ 404.1545(c), 416.945(c) (describing mental activities such as understanding, remembering, and carrying out instructions; and responding appropriately to supervision, coworkers, and work pressures in a work setting). The ALJ noted that Plaintiff "has not experienced any need for hospitalization or partial hospitalization for mental health reasons, and indeed has no formal psychiatric care." (Tr. 15.) Nevertheless, the ALJ addressed Plaintiff's mental impairments of anxiety and specific learning disability in his decision. (Tr. 14.)

First, the ALJ discussed the Plaintiff's mental impairment of anxiety, for which she received anti-depressant medication from her family physician on May 17, 2017. (Tr. 15, 1198-1201.) However, the ALJ found that "the record d[id] not indicate difficulty dealing with others due to anxiety, nor that this concern has lasted for 12 months or more" since the alleged onset date. (Tr. 15.)

Second, the ALJ examined the evidence concerning Plaintiff's other mental health

---

[5] *See, e.g.*, *Ashby v. Colvin*, No. CIV.A. 2:14-674, 2015 WL 1481625, at *3 (S.D.W. Va. Mar. 31, 2015) (unpublished) ("There is no explicit function-by-function analysis. But that alone, as the Fourth Circuit explained in *Mascio*, is not enough to require remand. Instead, the court must assess whether the ALJ's RFC analysis considered the relevant functions . . . whether that decision is supported by substantial evidence in the record.").

impairments, including specific learning disorders—reading disorder, math disorder, and disorder of written expression—which were diagnosed by Dr. Joseph Appollo and Terry Warner, M.S., on February 26, 2012. (Tr. 15, 718-22.) The ALJ discussed Plaintiff's average IQ testing score and lower performance results on a test of academic achievement in 2001 as well as similar testing results in 2011. (Tr. 15, 381, 690-93.) Despite her low test scores and diagnosed learning disabilities, the ALJ observed that

> [t]he record, including [Plaintiff's] testimony, shows that in 2015 and 2016, [Plaintiff] engaged in significant work as a waitress at Waffle House, and in managing a Subway restaurant. These jobs generally require a significant ability to remember and apply information . . . [Plaintiff's] ability to perform these tasks in a work setting is *all the more notable* in light of her low language achievement scores . . . with diagnosed learning disability.

(Tr. 14-15, emphasis added.) Additionally, the ALJ noted that, despite Plaintiff's learning disabilities, Plaintiff was able to read and complete a written function report for the state agency. (Tr. 15, 526-36.) Finally, the ALJ noted that

> In addition to working full time or more during the period leading up to the alleged period of disability, [Plaintiff] was also . . . providing significant care to her young daughter, Lilly, who was four years old at the time of the hearing. The record reflects that she was generally responsible for her own medical care, can drive a car, shop, leave home alone, and manage her own finances.

(Tr. 15, 526-36.)

Third, the ALJ considered the opinions of state agency mental health consultants. The ALJ gave little weight to the opinion of Dr. Nancy Y. Herrera, who suggested that Plaintiff's mental disorders were non-severe and resulted in no relevant limitations in work activities. (Tr. 18, 179-93.) Instead, the ALJ, agreed with Dr. Lori Brandon Souther,

> that [Plaintiff] could perform at most simple, routine, repetitive

7

> tasks. However, Dr. Souther additionally opined that [Plaintiff] would require low-stress environments and could not perform in fast-paced public settings. The record shows no significant evidence of poor social interactions that would limit [Plaintiff's] capacity to perform in public settings, and as she currently manages her own care and that of a young child, the [ALJ] does not find she requires a low-stress environment. Dr. Southers' opinion is given only some weight.

(Tr. 18.)

In light of the above evidence, the ALJ found Plaintiff's mental health impairments "would reasonably be expected to interfere with [her] ability to persist and maintain pace at complex tasks, particularly those involving academic skills." (Tr. 15.) However, the same evidence fully supports the ALJ's conclusion and RFC finding that Plaintiff could perform simple, routine, and repetitive tasks. (Tr. 16.) The ALJ's consideration of the medical and other evidence of record in determining Plaintiff's functional abilities is both legally correct and supported by substantial evidence.

Plaintiff's arguments to the contrary are not persuasive. First, Plaintiff argues that the ALJ failed to fully account for the opinion of Dr. Appollo. Plaintiff argues that Dr. Appollo articulated more than what the ALJ discussed in his decision; namely, Dr. Appollo stated Plaintiff's ability to perform at a pace was "slower than the average person" and her "ability to deal with routine stress and pressure may be somewhat reduced." (Tr. 721.) However, this argument is unpersuasive because the ALJ explicitly addressed the opinion of Dr. Appollo elsewhere in the decision (*see* Tr. 15), and, based upon other evidence, ultimately did not accord these specific findings regarding Plaintiff's pace and stress-environment persuasive. Second, Plaintiff argues that the RFC said nothing about a limited pace of work. However, the ALJ did address Plaintiff's pace—the ALJ found that Plaintiff's ability "to persist and maintain

8

pace at complex tasks, particularly those involving academic skills" would be affected by her mental health impairments. (Tr. 15.) Additionally, in discussing Dr. Souther's opinion, the ALJ did not give much weight to Dr. Souther's opinion that Plaintiff could not perform in fast-paced settings. (Tr. 18.) Although the ALJ did not use the word "pace," the ALJ addressed Dr. Souther's opinion about pace when he wrote that the "record show[ed] no significant evidence of poor social interactions that would limit [Plaintiff's] capacity to perform in public settings." (*Id.*) For all of these reasons, Plaintiff's arguments are not persuasive.

### 2. The ALJ Adequately Accounted for Plaintiff's Moderate Limitations in CPP.

The Plaintiff also contends that the ALJ failed to incorporate non-exertional limitations regarding Plaintiff's ability to stay on task after the ALJ found that Plaintiff had moderate limitations in CPP.[6] (Docket Entry 13 at 11-18.)

In *Mascio*, discussed above, the Fourth Circuit also remanded the matter, in pertinent part, because the hypothetical the ALJ posed to the vocational expert, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate limitations in CPP. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (citation omitted). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a

---

[6] Since Plaintiff only contends that the ALJ failed to incorporate non-exertional limitations for pace, the Court does not find it necessary to address whether the ALJ failed to incorporate non-exertional limitations for concentration or persistence.

9

claimant's limitation in [CPP]." *Id.* Although the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, absent such an explanation, remand was necessary. *Id.* As discussed below, Plaintiff's argument proves unpersuasive.

Here, the ALJ's decision sufficiently explains why Plaintiff's moderate limitations in CPP did not translate into further restrictions on pace in the RFC. First, the ALJ discussed the evidence regarding Plaintiff's ability to concentrate, persist, and maintain pace. As outlined above, the ALJ discussed Plaintiff's jobs right before her amended alleged onset date and found it "all the more notable" that, despite Plaintiff's learning disabilities, she had worked these jobs that "require a significant ability to remember and apply information, for instance, to take and fill orders, and [Plaintiff] has not alleged a subsequent fall in this ability." (Tr. 15.) The ALJ also noted that Plaintiff's "recent work includes jobs dealing with customers on a near-constant basis, and she has not alleged that this task was an obstacle to her continued success at work." (*Id.*) These statements suggest that Plaintiff was able to maintain a normal work-day pace when she performed these jobs, and there is no evidence to the contrary. Both of these statements in the ALJ's decision, based on the evidence of Plaintiff' work experience shortly before the amended alleged disability onset date, demonstrate that Plaintiff was able to maintain a normal work-day pace and therefore did not require further restrictions on pace in her RFC.

Second, the ALJ reviewed the opinions of state agency mental health consultants in determining whether Plaintiff's moderate limitations in CPP required further restrictions on pace in the RFC. As discussed above, the ALJ gave little weight to the opinion of Dr. Herrera,

10

who suggested that Plaintiff's mental disorders resulted in no relevant limitations in basic work activities. (Tr. 18.) The ALJ agreed with Dr. Souther, who found that the Plaintiff "could perform at most simple, routine, repetitive tasks," but the ALJ did not agree with Dr. Souther's view that Plaintiff "could not perform in fast-paced public settings." (*Id.*) The ALJ found that the "record show[ed] no significant evidence of poor social interactions that would limit [Plaintiff's] capacity to perform in public settings, and as she currently manages her own care and that of a young child, the [ALJ] d[id] not find she require[d] a low-stress environment." (*Id.*) The ALJ's consideration of evidence of record in determining that Plaintiff's moderate limitations in CPP did not require further restrictions on pace is both legally correct and supported by substantial evidence.

Plaintiff's arguments to the contrary are not persuasive. First, Plaintiff argues that the ALJ's decision omits portions of Dr. Appollo's report, including Plaintiff's "diagnosis of borderline intellectual functioning," his finding that Plaintiff's ability to perform simple tasks was limited, and his finding that Plaintiff's ability to tolerate stress and workplace pressures were significantly limited. (Docket Entry 13 at 12-13.) This argument is without merit. The ALJ was not required to directly cite to Dr. Appollo's report in rendering his decision, as long as the ALJ's decision is supported by substantial evidence, which, as demonstrated above, it is. Second, Plaintiff argues that the ALJ failed to allocate weight to Dr. Appollo's opinion. (*Id.* at 16.) The ALJ explicitly mentioned Dr. Appollo in his decision, naming Dr. Appollo as one of the two health care professionals who diagnosed Plaintiff's learning disabilities. (Tr. 15.) Although the ALJ did not explicitly assign weight to Dr. Appollo's opinion in his decision, the ALJ did note that

11

> [i]n considering the weight to accord all opinions of record other than that of Dr. Hanson [sic], the undersigned has also considered that these opinions were rendered before [Plaintiff's] most recent period of substantial work, and related changes in her medical condition. Of all sources of opinion in the record, only Dr. Hanson [sic] has had significant familiarity with her recent medical condition.

(*Id.* at 18.)

Both of Dr. Appollo's reports, dated January 2011 and February 2012, were rendered well before Plaintiff's amended alleged disability onset date (*see* Tr. 687-92, 718-21)[7], and, as the ALJ noted, Plaintiff engaged in substantial work after such time. Contrary to Dr. Appollo's January 2011 opinion that Plaintiff had mental work-related limitations stemming from her learning disorder (*id.* at 692), Plaintiff went on to successfully perform several jobs thereafter, including two semi-skilled positions. (*Id.* at 88-89, 318-47.) Moreover, the ALJ gave weight to other evidence in the record and made findings contrary to Dr. Appollo's more restrictive limitations. For example, the ALJ assigned weight to Dr. Souther's opinion, which cited and discussed Dr. Appollo's report. (*Id.* at 18, 155.) As previously stated, the ALJ agreed with Dr. Souther, who found that Plaintiff "could perform at most simple, routine, repetitive tasks," but the ALJ did not agree with Dr. Souther's additional limitations. (*Id.* at 18.) Ultimately, given the extent of the ALJ's analysis, any failure by the ALJ to explicitly weigh Dr. Appollo's opinions is harmless. *See Tanner v. Comm'r of Soc. Sec.*, 602 Fed. App'x 95, 101 (4th Cir. 2015) ("[I]t is highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability.").

---

[7] Dr. Appollo acted as the supervising psychologist on the February 2012 written evaluation. (*See* Tr. 721.)

Third, Plaintiff also contends that the ALJ failed to adequately address the relationship between Plaintiff's depression and her physical symptoms. (Docket Entry 13 at 16-17.) This argument is unpersuasive since Plaintiff did not list depression as a physical or mental condition that limited her ability to work when completing her Disability Report. (Tr. 506.) As the ALJ noted, Plaintiff had no history of specialized mental health treatment in the form of hospitalizations or formal psychiatric care. (Tr. 15.) In May 2017, Plaintiff complained of anxiety to her family physician and received anti-depressant medication (*id.* at 15, 1198-1201); notwithstanding such, her mental status examinations were routinely unremarkable. (*See id.* at 1199-1200, 1258, 1264, 1269.)

Finally, Plaintiff contends that the RFC contained no limitation on fast-paced settings. Granted, the RFC includes no explicit limitation on fast-paced settings—Plaintiff is limited to "performing simple, routine, and repetitive tasks." (Tr. 16.) However, given the ALJ's decision, including his findings as to Dr. Souther's opinion, and in light of Plaintiff's ability to perform significant work in 2015 and 2016, the absence of a pace limitation in the RFC is supported by substantial evidence. Plaintiff's argument thus fails.

### 3. The ALJ Properly Applied the Treating Source Rule.

Finally, Plaintiff contends that the ALJ failed to follow the treating source rule, specifically by failing to give Dr. Hansen's opinion proper weight. (Docket Entry 13 at 18.) For the following reasons, Plaintiff has failed to identify any material error.

The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R.

13

§§ 404.1527(c)(2), 416.927(c)(2).[8] The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). A treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

Here, the ALJ assigned significant weight to Dr. Hansen's opinion. The ALJ assessed discussed Dr. Hansen's opinion in great detail:

> The record during the alleged period of disability is limited, consisting of relatively few medical reports, most of which were submitted after this disability hearing. However, based on his record of treating [Plaintiff] most recently on May 2, 2017, Dr. Hanson [sic] opined on May 18, 2017, that [Plaintiff] could perform all basic work activities at most four hours a day, being capable of at most part-time work, due to abdominal pain and other symptoms of Crohn's currently in remission. Notably, however, he indicated that her ongoing residual symptoms could be expected to resolve in three to four months. [Plaintiff] has alleged disability commencing in September 2016, but to be entitled to a finding of disability her related limitations must persist for 12 months or more. Dr. Hanson's [sic] opinion clearly suggests instead that her limitations would resolve in a period of less than 12 months. The [ALJ] accords significant weight to Dr.

---

[8] For claims filed before March 27, 2017, the rules in 20 C.F.R. §§ 404.1527 and 416.927 apply. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. §§ 404.1520c and 416.920c apply. In this case, Plaintiff's claims were filed in 2013. (Tr. at 327-346.) Therefore, §§ 404.1527 and 416.927 apply in this case. Although SSR 96-2p has been rescinded for claims filed on or after March 27, 2017, SSR 96-2p applies here also. *See, e.g.*, *Reyes v. Berryhill*, Civ. A. No. 16-10466-DJC, 2017 WL 3186637, at *7 n.5 (D. Mass. July 26, 2017).

> Hanson's [sic] opinion, but nonetheless finds her capable of the
> range of basic work activities set forth above.

(Tr. 17, citations omitted.) Here, the ALJ explained that Dr. Hansen's opinion, which suggested Plaintiff's condition would resolve within twelve months of treatment, was inconsistent with a finding of disability. Based on the limited medical evidence after the alleged onset date of September 1, 2016, and the absence of any other substantial evidence in the record to the contrary, the ALJ correctly applied the treating source rule to Dr. Hansen's opinion.

Plaintiff's arguments to the contrary are unpersuasive. First, Plaintiff argues that the ALJ misinterpreted Dr. Hansen's opinion of Plaintiff's symptoms rather than limitations. (Docket 13 at 20-21.) However, the ALJ's decision reasonably interpreted Dr. Hansen's opinion in light of the record as a whole, including medical evidence prior to the amended alleged onset date. For example, the ALJ noted that, after her surgery in 2014, Plaintiff "returned to work for a long period in 2015 and 2016." (Tr. 17.) The ALJ also noted that, during an appointment with Dr. Hansen in 2016, Dr. Hansen mentioned that Plaintiff's symptoms appeared to have improved post-surgery: outside of episodes of abdominal pain, Plaintiff had "one bowel movement per day and [was] relatively pain free." (*Id.* at 17, 1157.) Moreover, the ALJ acknowledged Dr. Hansen's statements that Plaintiff "had not appeared for schedule follow-up, and was poorly compliant with her prescription . . . suggesting that her increased symptoms were in part due to medical non-compliance." (*Id.* at 17, 1157.) Given the limited evidence during the alleged period of disability as well as the record between Plaintiff's 2014 surgery and the alleged onset date in 2016, the ALJ adhered to the treating

source rule and accorded proper weight to Dr. Hansen's opinion that Plaintiff's symptoms would resolve within a few months. Plaintiff's argument thus fails.

Plaintiff also argues that the longitudinal record does not show that her symptoms could be controlled with any particular treatment. (Docket Entry 13 at 21.) However, from Plaintiff's amended alleged onset date, through September 15, 2017, the decision date, Plaintiff received very minimal medical treatment, as the ALJ pointed out. (Tr. 17, 1198-1270). The lack of more extensive treatment within the relevant period supports the ALJ's conclusion that Plaintiff's impairments did not render her disabled. *See Mickles v. Shalala,* 29 F.3d 918, 919-921 (4th Cir. 1994) (failure to seek medical treatment may support a finding that a claimant's impairments are not as severe as alleged). Indeed, during the same time period in which Dr. Hansen rendered his opinion, a treatment note from Plaintiff's family physician, Dr. Brian Burkhart, indicated that Plaintiff was taking "non-prescription antidiarrheals (and Humira)" for her Crohn's disease. (Tr. 1198.) Dr. Burkhart recommended that Plaintiff continue her current medications. (*Id.* at 1200.) Ultimately, Plaintiff's minimal conservative treatment and lack of medical evidence demonstrating significant Crohn's-related flare-ups during the relevant period supports the ALJ's interpretation of Dr. Hansen's opinion that Plaintiff's symptoms would resolve within a few months of adhering to medical treatment. Thus, this argument also fails.

### V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the

16

Pleadings (Docket Entry 12) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be **GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

October 2, 2019
Durham, North Carolina